## Koller, Appellant, *v.* Pennsylvania Railroad Company.

Argued Sept. 29, 1944. Before MAXEY, C. J., DREW, LINN, STEARNE, PATTERSON and STERN, JJ.

*Charles J. Margiotti,* with him *Margiotti, Pugliese & Casey* and *William C. Chase,* for appellant.

*Robert D. Dalzell,* with him *Dalzell, McFall, Pringle & Bredin,* for appellee.

OPINION BY MR. JUSTICE DREW, December 8, 1944:

As a result of an accident in which a train of defendant, Pennsylvania Railroad Company, collided with the rear of a train of the New York Central Railroad Company, Arthur Koller, plaintiff, sustained severe and permanent injuries. He brought this action in trespass to recover compensation. After defendant's motion for a directed verdict was refused, the jury found for plaintiff.

The court later entered judgment n. o. v. and plaintiff appealed.

The accident occurred on June 25, 1941, near Jersey Shore, Clinton County, Pennsylvania, while a New York Central train, in charge of Koller as conductor, was being operated over the tracks of the Pennsylvania Railroad. The train had left Avis, travelling west, for Cherry Tree. From Avis to Ridge Tower the trip was routed entirely over Pennsylvania lines. At Ridge Tower the route crossed the eastbound track of the Pennsylvania Railroad, entered upon the rails of the New York Central, and proceeded to Cherry Tree. When the train reached Drury Tower, an intermediate point on the route before Ridge Tower, the engineer was given an order in writing by the tower operator, an employee of the Pennsylvania Railroad, directing him to take the train onto the siding at Ridge Tower and to remain there for further orders. No notice was given Koller, and he did not know of the order given his engineer. According to the safety rules of both railroads, the conductor, who is actually in charge of the train, should also receive a copy of any such message. That he did not receive such a copy is admitted.

At the time of the accident both trains were travelling on a permissive block, which, according to the rules of both railroads, permits the movement of one or more trains in the same direction in the block, and it is the duty of the engineer of any train entering such block to keep his train under such control that he can stop within the range of vision. Under the same rules, while a train is in the block, the operator of the tower can set the signal on "permissive" and the train following is thereby advised that the track is obstructed. While the New York Central train was thus travelling within the block, a Pennsylvania train was admitted to the block on such permissive signal. When the New York Central train slowed down preparatory to going upon the siding, its brakeman left the caboose and, as is also required by the

safety rules, placed two torpedoes on the track to warn approaching trains of his train's presence. After returning to the caboose the brakeman saw the Pennsylvania train approaching and immediately tried to attract its engineer's attention by displaying and waving a regulation red flag. Perceiving that the approaching train was evidently not going to stop, the brakeman cried a warning to plaintiff, and jumped to safety. Plaintiff, being seated in the upper part of the caboose, did not have time to vacate it before the Pennsylvania train crashed into and demolished it. As a result, his one arm was amputated and a vertebra in his back crushed.

The Pennsylvania Railroad Company does not seriously dispute its negligence, nor could it, for the record is replete with evidence of its liability. For instance, the engineer of its train, testifying for defendant, admitted that the day was clear and sunny and that the visibility was good. He stated that he had a clear view for "between three and four hundred feet", that he knew he was operating in a permissive block and realized what his duties were under such signal. He also testified that he had heard the two torpedoes explode and that he had seen the efforts of the brakeman who tried to flag him. He asserted that ordinarily he could stop his train within a distance of three hundred feet but that in this instance he was unable to do so even with the use of emergency air.

Defendant contends that if it is liable at all, it is jointly liable with the New York Central Railroad Company, and that since on December 22, 1941, plaintiff released [1] that Company for a consideration of $4,500.00, it too was released.

---

[1] The release is as follows: "Arthur W. Koller,
Cherry Tree, Pennsylvania.

"For the sole consideration of Four thousand five hundred and no/100 Dollars, received to my full satisfaction from The New York Central Railroad Company, and without any other representation, promise or agreement, written or oral, I hereby release and discharge the said The New York Central Railroad Company from all claims, demands, grievances and causes of action of every kind whatsoever and including, but without limitation of the foregoing, all liability

There can be no doubt that if the New York Central had been joined as a defendant, the trial court would have been compelled to give binding instructions in its favor, because there is no evidence showing any liability on its part. It would have been declared blameless as a matter of law.

The sole ground of the learned court below for granting judgment n. o. v. was that this release was given. We fully realize the correctness of the proposition set forth by Mr. Justice STERN in *Thompson v. Fox*, 326 Pa. 209, 192 A. 107, that there can be but one satisfaction for the same injury and that the release of one wrongdoer operates as a release of all: *Mason v. Lavine*, 302 Pa. 472, 153 A. 754; *Peterson v. Wiggins*, 230 Pa. 631, 79 A. 767.

But before there can be a joint tort, there must be a community of fault which occasioned the accident: *Cleary v. Quaker City Cab Co.*, 285 Pa. 241, 132 A. 185; *Holstein v. Kroger G. & B. Co.*, 348 Pa. 183, 34 A. 2d 491; *Landis v. Conestoga T. Co.*, 349 Pa. 97, 36 A. 2d 465. Here the testimony is clear and, when combined with the physical facts, leaves no room for doubt that the New York Central was in no way responsible for the accident. Since there was no community of fault, there was no joint tort. In a situation such as this the law is equally clear that a release of one not shown to be liable does not release a tort-feasor: *Union of Russian Societies v.*

---

for damages of every kind, nature or description now existing or which may hereafter arise from or out of injuries and damages received by me at or near Keating Junction, [near Jersey Shore, Clinton County] State of Pennsylvania, on or about the 25th day of June, 1941.

"Specifically saving and reserving all rights of every kind that I have or may have against The Pennsylvania Railroad Company on account of injuries received by me. This release is intended not to in any manner operate as a release, partial or otherwise, of any claim or claims against The Pennsylvania Railroad Company.

"I have read and understood this release.

"In witness whereof, I have hereunto set my hand and seal this 22nd day of December, 1941. Arthur W. Koller (Seal)".

*Koss,* 348 Pa. 574, 36 A. 2d 433; *Turner v. Robbins,* 276 Pa. 319, 120 A. 274; *Rosenfeld v. Stauffer,* 121 Pa. Superior Ct. 103, 182 A. 714; *McClure v. Penna. R. R. Co.,* 53 Pa. Superior Ct. 638.

Throughout the entire case plaintiff carried the burden of proof of defendant's negligence; *Hunt v. Aufderheide,* 330 Pa. 362, 199 A. 345; *Ealy v. N. Y. Central R. R. Co.,* 333 Pa. 471, 5 A. 2d 110; *Dickey v. Boggs & Buhl, Inc.,* 345 Pa. 453, 29 A. 2d 1. And the jury found as a fact, that defendant was solely responsible for the accident, that issue having been submitted to the jury in the following language by the trial court: "Your duty then is to determine what brought about the accident: Whether or not the Pennsylvania employees were negligent alone? Whether or not the New York Central employees were negligent alone? Or whether or not the negligence of the employees of both of the railroads acting together brought about the injury to the plaintiff? If you find that there was no negligence on the part of anybody, or if you find that the negligence of the employees of both the New York Central and the Pennsylvania railroads operating together brought about the accident, or if you find that Mr. Koller's actions or failure to act were negligent and that negligence was a . . . contributing cause of the happening of the accident, then you will find a verdict for the defendant. It is only if you find that the Pennsylvania Railroad was solely guilty of negligence which brought about the accident that you go further and render a verdict for the plaintiff and against the Pennsylvania Railroad."

Judgment reversed and here entered in favor of plaintiff in the amount of the verdict. Costs to be paid by defendant.

DISSENTING OPINION BY MR. JUSTICE PATTERSON:

I cannot agree with the majority opinion which holds that the release to the New York Central Railroad, given in consideration of the payment of $4,500 in full satisfaction of all damages sustained as the result of the collision, does not bar this action against the Pennsylvania

Railroad Company, appellee. The theory of the law is, and all the cases so state, that there can be but one satisfaction for an injury. See *Union of Russian Societies v. Koss,* 348 Pa. 574; *Thompson v. Fox,* 326 Pa. 209, 212; *Mason v. Lavine, Inc.,* 302 Pa. 472; *Conway v. Pottsville U. T. Co.,* 253 Pa. 211, 214; *Smith v. Roydhouse, Arey & Co.,* 244 Pa. 474, 479. The release under consideration is in full satisfaction "for damages of every kind, nature or description now existing or which may hereafter arise from or out of injuries and damages received by me at or near Keating Junction, State of Pennsylvania, on or about the 25th day of June, 1941." We all agree that the release of one joint tortfeasor is a release of all wrongdoers and that a release by one not a joint tortfeasor in no way affects rights against the wrongdoer. In *Thompson v. Fox,* supra, 213, Mr. Justice STERN said: ". . . the principle which underlies the rule is that the injured person is given a legal remedy only to obtain compensation for the damage done to him, and when that compensation has been received from any of the wrongdoers, his right to further remedy is at an end." Institution of suit against the party released is not a prerequisite to effect satisfaction for injuries sustained: *Smith v. Roydhouse, Arey & Co.,* supra, 479.

The conclusion of the majority that the record fails to establish community of fault is erroneous. Had the New York Central been joined as a defendant the trial court would have been compelled to give binding instructions in its favor, not because there was no evidence of liability but because Koller, for the consideration of $4500, had released it from any and all liability arising out of the accident. The negligence of the New York Central formed no part of the case; that issue was eliminated by the release. For the same reason, the statement in the opinion that the testimony "leaves no room for doubt that the New York Central was in no way responsible for the accident" is unwarranted and irrelevant. To the contrary, the release in question established a prima facie case of joint negligence and the burden was

upon plaintiff to show, if he could, that the party released did not contribute to the accident: *Smith v. Roydhouse, Arey & Co.*, supra, 479. The release, being in writing, should have been construed by the court; the learned judge should have instructed the jury that it was prima facie evidence that the New York Central was also negligent; that the New York Central was not also negligent has not been proven. To the statement in the majority opinion that "throughout the entire case plaintiff carried the burden of proof of defendant's negligence" should be added "but has failed to prove non-liability on the part of the New York Central and thus failed to rebut the prima facie case established by the release." Had appellant undertaken to sustain this burden, as the law requires, he would have been compelled to show that there was no basis in fact or law for his receipt of $4,500. A court of justice cannot permit one to collect $4,500 in full satisfaction for injuries sustained and then deny that there was any justification therefor. We cannot say that the $4,500 payment was a gratuity and that the New York Central had not bought exemption before being sued. This is precisely what occurred in *Smith v. Roydhouse, Arey & Co.*, supra 479. The release offered in evidence is prima facie evidence of the New York Central's joinder in the tort. In *Smith v. Roydhouse, Arey & Co.*, we said at page 479: "Here the suit against the other had only been threatened, but was threatened for the same cause as that for which the earlier had been brought. The result in each was exactly the same; in that case the party bought exemption from liability after being sued, while in this the party bought exemption before being sued. The act that operated as a bar to the subsequent action was not the bringing of the earlier suit, but the settlement and extinguishment of the cause of action by receiving money from one charged with the negligence which occasioned the injury for which compensation was claimed. If the evidence in the case referred to established a prima facie case on this collateral issue, no less certainly did the

paper signed by the plaintiff and introduced in this case, releasing the subcontractors from liability for the same injury as that for which he subsequently brought suit against the defendant, together with the admission of record. There being nothing in rebuttal the sufficiency of the evidence was for the court."

No precedent exists for the conclusion of the majority. Our decisions are to the contrary. See *Thompson v. Fox*, supra; *Smith v. Roydhouse, Arey & Co.*, supra; *Peterson v. Wiggins*, 230 Pa. 631. *Union of Russian Societies v. Koss*, supra, does not support the majority opinion. In that case the release was given to one not a party to the transaction upon which the suit was based and who had no relation or connection whatever with the cause of action. In *Rosenfeld v. Stauffer*, 121 Pa. Superior Ct. 103, the release was given to Diver, the owner of the car which Stauffer had been driving at the time of the accident. No agency relationship was proven or alleged. Clearly, Diver was not a party to the accident and in no way connected with the cause of action. In *McClure v. Pennsylvania Railroad Company*, 53 Pa. Superior Ct. 638, 651, the ice company employer was clearly not a joint tortfeasor. The same is true in *Thomas v. Central Railroad Company of New Jersey*, 194 Pa. 511. *Turner v. Robbins*, 276 Pa. 319, rests upon an entirely different basis and is authority for neither proposition here advanced. In none of these cases was the party released directly involved in the cause of action. On the other hand, those cases wherein a release has been held effective show the party to have been directly involved. This case falls within the latter group. Here, as in *Smith v. Roydhouse, Arey & Co.*, supra, and *Thompson v. Fox*, supra, the party released was directly involved. It was one of the parties to the collision.

I would affirm the judgment of the court below on the authority of *Smith v. Roydhouse, Arey & Co.*, supra, and *Thompson v. Fox*, supra.

Mr. Justice LINN concurs in this dissent.